UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ELIZABETH LEFORT,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

18-CV-235

DECISION AND ORDER

---

On February 13, 2018, the plaintiff, Elizabeth Lefort, brought this action under the Social Security Act ("the Act"). She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled. Docket Item 1. On July 23, 2018, Lefort moved for judgment on the pleadings, Docket Item 9, and on September 14, 2018, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 12.

For the reasons stated below, this Court grants Lefort's motion in part and denies the Commissioner's cross-motion.

## **BACKGROUND**

### I. PROCEDURAL HISTORY

On March 6, 2014, Lefort applied for Supplemental Security Income benefits ("SSI"). Docket Item 7 at 88. She claimed that she had been disabled since December

7, 2010, due to illiteracy, a neck injury, titanium in her neck, headaches, numbness in her right leg, inability to feel her toes, and a herniation in her lower back. *Id.* at 88-89.

On August 6, 2014, Lefort received notice that her application was denied because she was not disabled under the Act. *Id.* at 100-10. She requested a hearing before an administrative law judge ("ALJ"), *id.* at 112-15, which was held on July 7, 2016, *id.* at 38. The ALJ then issued a decision on October 25, 2016, confirming the finding that Lefort was not disabled. *Id.* at 23. Lefort appealed the ALJ's decision, but her appeal was denied, and the decision then became final. *Id.* at 10-13.

## II. RELEVANT MEDICAL EVIDENCE

The following summarizes the medical evidence most relevant to Lefort's objection. Lefort was examined by several different providers but only one—Cameron B. Huckell, M.D., an orthopedic surgeon specializing in spinal reconstructive surgery—is most significant to this Court's review of Lefort's claims.

### Cameron B. Huckell, M.D., Orthopedic Surgeon

The ALJ determined that Dr. Huckell, an orthopedic surgeon, was Lefort's treating physician. Docket Item 7 at 455 ("Dr. Huckell . . . is a treating source."). Dr. Huckell operated on Lefort on April 23, 2012, to remove a herniated disc in her neck. Docket Item 389.

The record includes treatment notes from only one visit with Dr. Huckell. On September 24, 2015, Lefort visited Dr. Huckell for a follow up. *Id.* She described "her neck as being improved and [was] overall happy with her post-op results." *Id.* But Lefort told Dr. Huckell that "she has noticed that her low back is getting worse." *Id.* She said "that her low back pain is a constant ache." *Id.* "[I]t can be as high as an 8-9 out of

2

10 at its worst." *Id*. "The pain is located at the centralized axial low back," and it "now radiates down her right leg." *Id*. She also reported "an intermittent numbness and paresthesias [in] her [left] leg." *Id*.

After an examination, Dr. Huckell found that "Elizabeth sustained significant injuries to [her] spine as a result of [a] motor vehicle accident." *Id*. at 392. He diagnosed her with lower back pain, a cervical herniated disc, and radiculitis. *Id*. Dr. Huckell opined that "Elizabeth is considered to be temporarily disabled at this time as a result of the motor vehicle accident dated 12/7/10 and since surgery dated 4/23/12." *Id*. at 393.

## III. THE ALJ'S DECISION

In denying Lefort's application, the ALJ evaluated Lefort's claim under the Social Security Administration's five-step evaluation process for disability determinations. *See* 20 C.F.R. § 404.1520. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two. § 404.1520(a)(4).

At step two, the ALJ decides whether the claimant is suffering from any severe impairments. § 404.1520(a)(4)(ii). If there are no severe impairments, the claimant is not disabled. *Id.* If there are any severe impairments, the ALJ proceeds to step three. § 404.1520(a)(4).

At step three, the ALJ determines whether any severe impairment or impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). If the claimant's severe impairment or impairments meet or equal one listed in the regulations,

3

the claimant is disabled. *Id.* But if the ALJ finds that none of the severe impairments meet any in the regulations, the ALJ proceeds to step four. § 404.1520(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See* §§ 404.1520(a)(4)(iv); 404.1520(d)-(e). The RFC is a holistic assessment of the claimant—addressing both severe and nonsevere medical impairments—that evaluates whether the claimant can perform past relevant work or other work in the national economy. *See* 20 C.F.R. § 404.1545.

After determining the claimant's RFC, the ALJ completes step four. 20 C.F.R. § 404.1520(e). If the claimant can perform past relevant work, he or she is not disabled and the analysis ends. § 404.1520(f). But if the claimant cannot, the ALJ proceeds to step five. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); 20 C.F.R. § 404.1520(a)(v), (g). More specifically, the Commissioner bears the burden of proving that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

In this case, the ALJ determined at step one that Lefort had not engaged in "substantial gainful activity" since March 6, 2014, the application date. Docket Item 7 at 15. At step two, the ALJ found that Lefort had the following severe impairments: "cervical disc disorder, status post-surgical repair; lower back disorder; and depressive disorder, not in current treatment." *Id.* At step three, the ALJ determined that Lefort did

4

"not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* at 16.

In assessing Lefort's RFC, the ALJ determined that Lefort could perform sedentary work as defined in 20 C.F.R. § 416.967(a),[1] except that she "has moderate limitations in the ability to move her head in all directions." *Id.* at 17. He also found that she "is limited to work at an unskilled level." *Id.*

At step four, the ALJ determined that Lefort "is unable to perform any past relevant work." *Id.* at 21. But at step five, the ALJ determined that the Commissioner sustained her burden of establishing that Lefort had the RFC to perform "jobs that exist in significant numbers in the national economy." *Id.* at 22. Specifically, the ALJ credited the vocational expert's testimony that Lefort could perform jobs such as a table worker, addresser, or order clerk. *Id.* at 22-23.

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* This includes ensuring "that the claimant has had a full hearing

---

[1] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a).

5

under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## **DISCUSSION**

Lefort makes several arguments that the ALJ erred. Docket Item 9-1 at 8-16. Among them, Lefort argues that the ALJ failed to follow the procedural mandates of the treating physician rule when evaluating Dr. Huckell's opinions. *Id.* at 15-16. This Court agrees.

"Social Security Administration regulations, as well as [Second Circuit] precedent, mandate specific procedures that an ALJ must follow in determining the appropriate weight to assign a treating physician's opinion." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). "First, the ALJ must decide whether the opinion is entitled to controlling weight." *Id.* "The opinion of a claimant's treating physician as to the nature and severity of an impairment is given controlling weight so long as it is well-supported

6

by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." *Id.* (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). "Second, if the ALJ decides the opinion is not entitled to controlling weight, it must determine how much weight, if any, to give it." *Id.* "In doing so, it must 'explicitly consider' the following, nonexclusive '*Burgess* factors': '(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Id.* at 95-96 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)). "At both steps, the ALJ must 'give good reasons in its notice of determination or decision of the weight it gives the treating source's medical opinion.'" *Id.* at 96 (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)).

"An ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning weight . . . is a procedural error." *Id.* "If 'the Commissioner has not otherwise provided good reasons for its weight assignment,' [courts] are unable to conclude that the error was harmless and consequently remand for the ALJ to 'comprehensively set forth its reasons.'" *Id.* (quoting *Halloran*, 362 F.3d at 33).

In this case, the ALJ addressed Dr. Huckell's opinion only briefly:

In September 2015, Dr. Huckell opined [that] the claimant was considered to be temporarily disabled (Exhibit 15F, p. 6). I assign some weight [to this opinion] because he is a treating source. However, I noted that his opinion is conclusory and not fully supported by the medical record.

Docket Item 7 at 20.

That cursory analysis did not "'explicitly' apply the *Burgess* factors when assigning weight" to Dr. Huckell's opinion. *Estrella*, 925 F.3d at 96. The ALJ failed

7

even to mention "the first *Burgess* factor—'the frequency, length, nature, and extent of [Dr. Huckell's] treatment'—before weighing the value of the opinion." *See id.* (quoting *Selian*, 708 F.3d at 418). Nowhere in the ALJ's decision, for example, is the fact that Dr. Huckell is the doctor who operated on Lefort in 2012. Nor did the ALJ address the fourth *Burgess* factor—whether the physician is a specialist. In fact, there is nothing in the ALJ's decision to suggest that he considered Dr. Huckell's specialty when assessing Dr. Huckell's opinion about the nature and severity of Lefort's injuries.

Furthermore, the ALJ blurred the analysis of the second and third *Burgess* factors into one short statement—that Dr. Huckell's opinion is "not fully supported by the medical record." Docket Item 7 at 20. But the *Burgess* factors required the ALJ to explicitly consider "the amount of medical evidence supporting the opinion." *Estrella*, 925 F.3d at 95 (quoting *Selian*, 708 F.3d at 418). In other words, the ALJ might be correct that Dr. Huckell's opinion is not *fully* supported by the medical record, but to what extent is it supported? What evidence calls his opinion into question? What evidence supports his conclusions? The reviewing court is left to guess about the evidence in the medical record to which the ALJ refers.

What is more, "a searching review of the record" fails to "assure" this Court "that the substance of the treating physician rule was not traversed." *Id.* at 96 (quoting *Halloran*, 362 F.3d at 32). For example, as the surgeon who operated on Lefort, Dr. Huckell was in an unparalleled position to opine about the consistency of Lefort's allegations of impairment with the type of impairments that one might expect from orthopedic disorders such as Lefort's both before and after surgery.

8

Finally, the ALJ's determination that Dr. Huckell's opinion "is conclusory" is not a "good reason" for assigning it little weight. That is because "[t]o the extent [the] record is unclear, the Commissioner has an affirmative duty to 'fill any clear gaps in the administrative record' before rejecting a treating physician's diagnosis." *Selian*, 708 F.3d at 420 (quoting *Burgess*, 537 F.3d at 129). "In fact, where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel or a paralegal.'" *Rosa*, 168 F.3d at 79 (quoting *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)). And the ALJ's determination that the opinion of claimant's treating physician is conclusory triggers that duty. *Echevarria v. Sec'y of Health and Human Servs.*, 685 F.2d 751, 756 (1982) (quoting *Hankerson v. Harris*, 636 F.2d 893, 896 (2d Cir. 1980)). So if the ALJ thought that Dr. Huckell's opinion was too conclusory, the ALJ was obliged to contact the doctor to flesh it out.

Accordingly, Lefort's claim for disability benefits is remanded for reconsideration and to develop the record, as necessary, consistent with the procedural mandates of the SSA and Second Circuit precedent. This Court "will not reach the remaining issues raised by [Lefort] because they may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## **CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, Docket Item 12, is DENIED, and Lefort's motion for judgment on the pleadings, Docket Item 9, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: July 8, 2019
Buffalo, New York

 *s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE